**RISCHON DEVELOPMENT CORP., Appellant,**

v.

**CITY OF KELLER, Appellee.**

**No. 2–06–103–CV.**

Court of Appeals of Texas, Fort Worth.

Nov. 29, 2007.

Rehearing Overruled Dec. 20, 2007.

Shamoun Klatsky Norman, LLP, Jeffrey R. Sandberg, Dallas, and Walter W. Leonard, Fort Worth, TX, for Appellant.

Cantey Hanger LLP, S.G. Johndroe, III, Scott Fredricks, Fort Worth, Boyle & Lowry LLP, L. Stanton Lowry, Douglas H. Connor III, and Michael K. Kallas, Irving, TX, for Appellee.

Panel A: HOLMAN, GARDNER, and McCOY, JJ.

## OPINION

ANNE GARDNER, Justice.

### I. Introduction

This is a takings case. Appellant Rischon Development Corp. complains that the City of Keller committed an unlawful taking under the Texas constitution by imposing certain requirements on a residential development planned by Rischon. The City contends that Rischon consented to all of the requirements. After a bench trial, the trial court rendered a take-nothing judgment on Rischon's claims against the City. We affirm.

### II. Background

The City of Keller is a home-rule municipality in Tarrant County. Rischon is a residential land development company. This dispute concerns a tract of land within the City's limits that Rischon developed into the Rolling Wood subdivision.

The property in question comprises 19.37 acres, all within the City. The land includes heavily wooded areas, hills, and a creek flowing through a ten-foot-deep ravine along the only access road, Davis Boulevard. As a result, the land remained undeveloped from the time the City annexed it in the 1960s. Prior to Rischon's efforts to develop the property, it was zoned for residential use with lots a minimum of 36,000 square feet.

In 1998—before it purchased the property—Rischon met with the City's development staff to discuss the general features of Rischon's proposed development. In December 1998, Rischon applied for rezoning of the property as a planned development—in other words, it sought zoning that would take into account the unique features of the property with some freedom to propose variances from the usual ordinance requirements. Rischon asked the City to approve a planned development zoning ordinance with the following requirements and features:

1. An entrance with wrought iron gates;

2. A private subdivision with private streets built to City standards but maintained by the residents of Rolling Wood through a homeowners association;

3. Wrought iron fencing along the front of the property with chainlink fencing around the perimeter of the property;

4. Reduction of the minimum lot size to 14,100 square feet;

5. Construction of 0.9 miles of asphalt hike/bike trials connecting all common areas;

6. No internal sidewalks;

7. Construction of a six-inch water line from Davis Boulevard and tied into the an existing water line to the south of the property;

8. Construction of a ten-inch offsite sewer line from the Trinity River Authority sewer line to Rolling Wood;

9. Construction of an eight-inch sanitary sewer line with extensions to the southern corners of the property for future development;

10. Construction of 480 feet of eight-inch sanitary sewer line from the southeast corner of Rolling Wood to Bandit Trail—an adjacent, existing development not then served by the City sewer system—for which the City would reimburse all costs; and

11. A private open-space area along the perimeter of the development and surrounding a small pond to mitigate the effect of the smaller lot sizes.

On January 11, 1999, the City's Planning and Zoning Commission considered Rischon's proposal. A number of Keller residents testified in opposition to the rezoning, particularly to rezoning the property for lot sizes that were less than half the size of the existing classification. The City fire chief recommended that the City require fire sprinkler systems in the Rolling Wood residences because of the restricted access to the neighborhood. City development staff recommended that, as per City ordinances, the City require Rischon to build sidewalks along the interior streets and to escrow the cost of the sidewalk along Davis Boulevard for future construction. Rischon consented to both recommendations.

The City Council considered Rischon's zoning request on February 2, 1999. Rischon did not object to City staff's sidewalk and fire sprinkler recommendations. With those modifications, the Council approved Rischon's application and rezoned Rolling Wood with the following conditions:

1. Installation of wrought iron fencing along Davis Boulevard and the installation of perimeter fencing of a nature to be determined at the preliminary plat stage;

2. Escrow of the Davis Boulevard sidewalk funds;

3. Construction of interior sidewalks;

4. Development of hike and bike trails;

5. Rischon to bear the entire cost of providing sanitary sewer service to the development;

6. Residential fire sprinklers in all dwelling units.

Rischon raised no objections to these requirements at the February 2 City Council meeting.

Rischon purchased the Rolling Wood property on March 9, 1999, for $400,000.

Rischon submitted a preliminary plat for the Rolling Wood development, and the City's Planning and Zoning Commission reviewed the plat on April 12, 1999. The plat included plans for construction of a wrought iron fence along the entire perimeter of the development. City staff recommended approval of the plat subject to several changes, including a six-foot-high fence along Davis Boulevard. Rischon's representative stated that the plat would comply with the staff recommendations concerning the wrought iron fence. The Planning and Zoning Commission approved the plat with the staff recommendations; again, Rischon did not object.

On December 22, 1999, Rischon's president, John Hawkins, advised the city by letter that he "deemed it inappropriate that I should bear the cost to extend" the sanitary sewer to Bandit Trail. The City

Attorney explained the sewer-extension requirement in a letter to the City Manager, and the City Manager forwarded the explanation to Hawkins. Ultimately, as described below, the City agreed to reimburse and did reimburse Rischon for the cost of the offsite Bandit Trail utility extensions.

Notwithstanding its dispute with the Bandit Trail sewer extension, Rischon submitted to the City Council a Developer's Agreement outlining the costs of construction, what was required, and how the construction would be carried out. The City Council approved the agreement on March 21, 2000; Hawkins signed it on behalf of Rischon on March 22; and City staff signed it by March 23. The City and Rischon agreed as follows:

1. Rischon agreed to build sidewalks along right-of-ways that did not front lots;

2. Rischon agreed to pay $23,000 in park fees in lieu of dedicating land for public use;

3. Rischon agreed to pay $34,500 in roadway impact fees;

4. Rischon agreed to escrow $8,575 for construction of the Davis Boulevard sidewalk;

5. Rischon agreed to build and pay for 400 feet of offsite water main extending north of Rolling Wood;

6. Rischon agreed to build and pay for 255 feet of ten-inch offsite sewer line and 738 feet of eight-inch sewer line running to the north to connect to the Trinity River Authority sewer main;

7. The city agreed to reimburse Rischon for the cost of constructing a six-inch onsite water line to the southeast corner of the development;

8. The City agreed to reimburse Rischon for the cost of constructing a six-inch offsite water line from Rolling Wood to Bandit Trail;

9. The City agreed to reimburse Rischon for the cost of constructing the eight-inch sewer line from Rolling Wood to Bandit Trail;

10. The City agreed to release 10% of the building permits for Rolling Wood when the City accepted the development's water, sewer, drainage, and street facilities; and

11. The City agreed to issue building permits for all lots after the final acceptance of Rolling Wood.

On March 28, 2000, Rischon sent a letter to the City requesting changes to the February 2, 1999 rezoning ordinance. Rischon wanted (1) to participate in the city's Water & Sanitary Sewer Main Extension Policy, which would have offset the cost of some of the utility extensions; (2) the return of the $8,575 escrowed for the Davis Boulevard sidewalk; (3) to not be required to install an entry gate to Rolling Wood and thus be excused from installing fire sprinkler systems on the lots within 600 feet of Davis Boulevard; (4) to change the hike and bike trails from those approved on the plat; (5) to change the landscaping around the pond; (6) to construct a wood fence behind certain lots; and (7) to increase the minimum square footage of homes from 2,400 square feet to 3,000 square feet. The City told Rischon that it needed to apply for a zoning amendment because all of the requested changes were changes to the zoning ordinance.

On September 1, 2000, Rischon applied for a zoning amendment, requesting the same changes as in its March 28, 2000 letter. The City's Planning and Zoning Commission heard the application on October 9 and recommended denial, and the

City Council heard and denied the application on November 7.

In the spring of 2001, Rischon filed a second zoning amendment application, requesting (1) to replat Rolling Wood as a public subdivision rather than a private subdivision, (2) to eliminate the perimeter fence in its entirety and build a wrought iron fence along Davis Boulevard only, and (3) reduce the length of the hike and bike trails within Rolling Wood. On May 14, 2001, the Planning and Zoning Commission recommended denial, and the City Council denied the application on June 5.

On January 26, 2001, the City reimbursed Rischon for the construction of certain offsite water and sewer lines, including the Bandit Trail lines, as per the Developer's Agreement and released 10% of the Rolling Wood building permits. On February 22, 2001, Rischon completed the water, sewer and drainage facilities at Rolling Wood. By February 8, 2002, Rischon substantially completed all the necessary work required by the February 22, 1999 zoning amendment, and the City released all of the building permits for Rolling Wood.

Rischon sued the City on July 15, 2002, alleging that the water and sewer extensions, fencing, sidewalks, and fire sprinkler systems required by the February 1999 zoning ordinance constituted a taking under the Texas constitution. The parties tried the case to the bench. The trial court made findings of fact and conclusions of law, including findings and conclusions that Rischon consented to, proposed, or adopted without objection the provisions of the February 1999 zoning ordinance and

the Development Agreement. The trial court rendered a take-nothing judgment, and Rischon filed this appeal.

## III. Discussion

In three issues, Rischon argues that, as a matter of law, the requirements imposed by the City on Rolling Wood were compensable takings in the form of exactions. In reply, the City argues that Rischon consented to all of the requirements.[1]

### A. Standard of review

The trial court made findings of fact and conclusions of law. Although Rischon recites the factual sufficiency and legal sufficiency standards of review in its brief, it does not specifically challenge any of the trial court's findings of fact; it does, however, challenge several of the conclusions of law as supported by no evidence or contrary to the great weight and preponderance of the evidence.

Unchallenged findings of fact are binding on an appellate court unless the contrary is established as a matter of law or there is no evidence to support the finding. *McGalliard v. Kuhlmann,* 722 S.W.2d 694, 696 (Tex.1986); *Raman Chandler Props., L.C. v. Caldwell's Creek Homeowners Ass'n, Inc.,* 178 S.W.3d 384, 390 (Tex.App.-Fort Worth 2005, pet. denied). A party may not challenge conclusions of law for factual sufficiency, but we may review conclusions of law to determine their correctness based upon the facts. *Citizens Nat'l Bank v. City of Rhome,* 201 S.W.3d 254, 256 (Tex.App.-Fort Worth 2006, no pet.); *Dominey v. Unknown Heirs and Legal Representa-*

---

1. The City also argues that Rischon lacks standing to assert a takings claim because it purchased the property after the City approved Rischon's zoning request. But as the City acknowledges, some of the requirements Rischon identifies as exactions—for example, the roadway impact fees—did not arise until after Rischon purchased the property. Thus, even if the City's standing argument has merit, it is not a bar to all of Rischon's claimed exactions.

*tives of Lokomski,* 172 S.W.3d 67, 71 (Tex. App.-Fort Worth 2005, no pet.).

We will uphold a conclusion of law if the judgment can be supported on any legal theory supported by the evidence. *Tex. Dep't of Public Safety v. Stockton,* 53 S.W.3d 421, 423 (Tex.App.-San Antonio 2001, pet. denied). We review conclusions of law de novo, *State v. Heal,* 917 S.W.2d 6, 9 (Tex.1996), and we will not reverse them unless they are erroneous as a matter of law. *Stockton,* 53 S.W.3d at 423.

## B. Consent

The takings clause of the Texas constitution prohibits the State from taking private land for public use without compensation or consent:

> No person's property shall be taken, damaged or destroyed for, or applied to public use without adequate compensation being made, *unless by the consent of such person.*

TEX. CONST. art. I, § 17 (emphasis added).[2] Several different general categories of takings claims exist. A distinct category of takings occurs when the government conditions the approval of permits on an exaction from the approval-seeking landowner. *Town of Flower Mound v. Stafford Estates, L.P.,* 71 S.W.3d 18, 30 (Tex.App.-Fort Worth 2002) (*"Flower Mound I"*), *aff'd,* 135 S.W.3d 620 (Tex.2004) (*"Flower Mound II"*) (citing *Dolan v. City of Tigard,* 512 U.S. 374, 377, 114 S.Ct. 2309, 2312, 129 L.Ed.2d 304 (1994)). Any requirement that a developer provide or do something as a condition to receiving municipal approval is an exaction. *Flower Mound II,* 135 S.W.3d at 625.

A landowner may consent to property being taken or damaged without payment of any compensation. TEX. CONST. art. I, § 17; *Hale v. Lavaca County Flood Control Dist.,* 344 S.W.2d 245, 248 (Tex.Civ.App.-Houston 1961, no writ). Consent is an act of the will; it need not be written, but may be spoken, acted, or implied. *Hightower v. City of Tyler,* 134 S.W.2d 404, 407 (Tex.Civ.App.-El Paso 1939, writ ref'd).

A landowner who objects to city-imposed requirements at every opportunity and administrative level does not consent to a taking by exaction even if the landowner waits until after receiving permit approval and after performing the complained-of requirements. *Flower Mound I,* 71 S.W.3d at 28. In *Flower Mound,* a landowner sought to develop land within the town of Flower Mound. *Id.* at 25. As a condition of plat approval, the town required the landowner to rebuild a road abutting the project at the landowner's sole expense in accordance with a town ordinance. *Id.* The landowner sought an exemption from the ordinance and objected to the road-improvement requirement "at every level within the Town." *Id.* The landowner sued the town after the town approved its plat and after the landowner rebuilt the road. *Id.* The town argued that the landowner waived its takings claim by failing to file suit before the town approved the plat and by accepting the benefit received in exchange for the exaction, namely, approval of its plat. *Id.* at 27. Rejecting the town's waiver

---

**2.** Although Rischon contends in its first and second issue statements that it established a taking "under federal law," nowhere in its brief does it cite or even mention the federal constitution; nor did it allege a taking under the federal constitution in its trial court pleadings. And in a trial court brief, Rischon specifically stated, "[W]e are in fact litigating based upon the Texas Constitution...." Therefore, we construe Rischon's claims to allege a taking under the Texas constitution only.

argument, we emphasized that the landowner "did unsuccessfully object to the [road] improvements condition at every administrative level within the Town." *Id.* at 28. The supreme court likewise rejected the municipality's argument, also noting that "as the parties stipulated, [the landowner] objected to the condition at every opportunity, and the [town] was well aware of [the landowner's] position." *Flower Mound II*, 135 S.W.3d at 630; *see also Sefzik v. City of McKinney*, 198 S.W.3d 884, 895 (Tex.App.-Dallas 2006, no pet.) (rejecting city's waiver and estoppel defenses when developer objected to the condition imposed for plat approval at every administrative level).

This case is unlike *Flower Mound* and *Sefzik* because Rischon did not object at "every opportunity" and "every administrative level" to the requirements it now identifies as exactions. To the contrary: Rischon raised no objections to the requirements of which it now complains until after the City approved the plat and after Rischon and the City entered into the Developer's Agreement.

Rischon identifies eight "requirements" that it claims are exactions: (1) the utility line extensions; (2) the park zone dedication fee in lieu of park land dedication; (3) the roadway impact fees; (4) the hike and bike trails; (5) the money escrowed for the Davis Boulevard sidewalk; (6) the sidewalks within the subdivision; (7) the residential fire sprinklers; and (8) the wrought iron perimeter fence. Rischon's own 1998 zoning application requested approval of the hike and bike trails and the wrought iron fence along the front of the property. When City staff recommended internal sidewalks, a sidewalk on Davis Boulevard, and residential fire sprinklers, Rischon did not object, and the trial court found that Rischon consented to these recommendations. When the City Council considered and approved the zoning application with the addition of the staff recommendations, Rischon did not object.

When Rischon submitted its preliminary plat to the Planning Commission, it stated that it would comply with staff recommendations for a wrought iron perimeter fence. Rischon did not object when the City approved the preliminary and final plats including the wrought iron perimeter fence.

After final approval of its plat, Rischon did object to paying for the extension of utilities to Bandit Trail. But the City ultimately agreed to pay and did pay for those extensions.

After the City approved the plat, Rischon negotiated and entered into the Developer's Agreement with the City on March 21, 2000. In the agreement, Rischon agreed to build internal sidewalks, pay the park fee in lieu of dedicating park land, pay the roadway impact fee, escrow $8,575 for the cost of building the Davis Boulevard sidewalk, and build 400 feet of eight-inch offsite water main extending north of Rolling Wood and 255 feet of ten-inch and 738 feet of eight-inch sewer line extending north of Rolling Wood to connect to the Trinity River Authority sewer main. The City agreed to reimburse Rischon for sewer and water lines running to the adjacent Bandit Trail area.

Thus, when Rischon signed the Developer's Agreement, it had either proposed, adopted without objection, or agreed to without objection all eight of the requirements it now identifies as exactions.

Not until March 28, 2000—*after* Rischon consented to staff recommendations without objection and *after* it signed the Developer's Agreement—did Rischon finally raise, in a letter to the City, objections to the requirements for the Davis Boulevard sidewalk, the fire sprinklers in houses close to Davis Boulevard, the hike and bike

paths, and the wrought iron fence except along Davis Boulevard. On September 1, 2000, Rischon filed a zoning amendment application requesting the refund of the Davis Boulevard sidewalk funds, elimination of the requirement to build fire sprinkler systems, reduction in the length of the hike and bike trails, changing the perimeter fence from wrought iron to wood, and elimination of the internal sidewalks. The Planning Commission and the City Council denied the application.

Rischon raised more objections in a second zoning amendment application in 2001, seeking to eliminate the perimeter fence except along Davis Boulevard and reduce the length of the hike and bike trails. Again, the Commission and the Council denied the application.

The trial court made conclusions of law that Rischon either proposed all of the provisions of the Rolling Wood development or adopted them without objection. The trial court specifically concluded that Rischon consented to the payment of the roadway impact fees and the park fees. The trial court's unchallenged findings of fact support these conclusions.

Rischon argues that the only conclusion of law the trial court made with regard to consent concerns the roadway impact fees and the park fees. While the only conclusion containing the word "consent" is the one dealing with the roadway impact fees and the park fees, the trial court also concluded that Rischon proposed or adopted without objection *all* of the Rolling Wood requirements. In this case, in light of the trial court's unchallenged findings of fact, "proposed or adopted without objection" is indistinguishable from "consented."

We hold that by proposing, adopting without objection, or agreeing in the Developer's Agreement without objection to all of the Rolling Wood "requirements,"

Rischon consented to those requirements. Therefore, the trial court did not err by rendering a take-nothing judgment on Rischon's claims. We overrule Rischon's three issues and affirm the trial court's judgment.