**Opinion filed March 27, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00155-CV
_____

## IN THE INTEREST OF K.B.K, M.A.K., AND J.C.K., CHILDREN

**On Appeal from the County Court at Law**

**Midland County, Texas**

**Trial Court Cause No. FM-49,310**

### M E M O R A N D U M   O P I N I O N

This appeal involves a modification request by Donald Kirk Kimbrell to have his three children, from his marriage to Cindy Burnside (formerly Cindy Kimbrell), live with him in Texas rather than with Cindy in Colorado. The children, K.B.K., M.A.K., and J.C.K., originally lived with Cindy in Midland, Texas, following Donald and Cindy's divorce, but Cindy later moved the children to Colorado Springs, Colorado. Donald filed a motion seeking an order to have the children return to Midland to live with him. The trial court entered an order that K.B.K. and M.A.K. reside with Donald in Midland, but that J.C.K. continue to

reside with Cindy in Colorado Springs. Donald appeals that part of the order that provided J.C.K. would continue to reside with Cindy in Colorado. We affirm.

## I. *The Evidence at Final Hearing*

The record showed that Donald and Cindy were divorced on July 30, 2009, but the decree was not signed until April 23, 2010. In the decree of divorce, the trial court appointed Donald and Cindy as joint managing conservators and ordered that Cindy could decide the children's primary residence. Cindy and the children initially remained in Midland, Texas, at the former marital residence. Cindy worked as a substitute teacher and received child support payments from Donald. Donald also worked in Midland and had frequent contact with the children and took them during nearly all of his visitation periods.

During the pendency of her divorce, Cindy had communicated with Lieutenant Colonel Jeff Burnside, a United States Air Force officer stationed in Colorado Springs, Colorado. Lieutenant Colonel Burnside was an old high school boyfriend, who also was going through a divorce. Cindy and Lieutenant Colonel Burnside communicated frequently through Facebook, a webcam, and other means; Lieutenant Colonel Burnside first visited Cindy in Midland in September 2009. Although the divorce decree specified that neither Donald nor Cindy would have members of the opposite sex stay in their homes when they had the children, Cindy had Lieutenant Colonel Burnside stay overnight in her home when he visited in September 2009. Soon, Cindy and Lieutenant Colonel Burnside saw each other every two weeks with some visits in Colorado Springs, some in Midland and Amarillo, and some in other places.

Cindy continued to see Lieutenant Colonel Burnside throughout 2009 and 2010, and she moved to Colorado Springs, Colorado, in June 2010. A month later, Cindy moved the children to Colorado after they completed their summer visitation with Donald. When Cindy moved to Colorado with the children, she moved into a

2

home at 3720 Birdie Court, Colorado Springs, Colorado. Donald was a frequent visitor to Colorado and often stayed several days to visit with his children, take them to school, and spend time with them. Donald said that Cindy once let him stay at her house to visit with the children, while she stayed at Lieutenant Colonel Burnside's house. Donald testified that the distance between Colorado Springs and Midland required frequent trips and created visitation difficulties and that the children did not appear to enjoy living in Colorado. Donald also testified about his perceptions that the children were not adjusting well to the new residence and schools, and that prompted him to request the court modify the child custody arrangements to have the children return to Midland to live.

Cindy married Lieutenant Colonel Burnside in April 2011, and the final hearing took place in July 2011. The trial court held that there had been a material and substantial change in circumstances and that it was in the best interest of two of his children, K.B.K. and M.A.K., to return to Midland, Texas, and live with their father, who would have the right to designate their primary residence. But the trial court held it was in the best interest of J.C.K. to remain in Colorado Springs, Colorado, with his mother, Cindy, who would retain the right to designate his primary residence.

In explaining its decision, the trial court commented in open court that Cindy's failure to adhere to the "morals" clause of the divorce decree and her behavior regarding a change of address and exchange of medical bills were troubling. The trial court also commented that Donald may have created angst and consternation on Cindy's new family with his inflexibility in visitation arrangements and demands for strict adherence to details in the decree. The trial court stated that it expected Cindy and Donald to treat each other with respect and to follow the court's orders so the children could move forward. The trial court also commented that the children seemed to have adjusted to the new family

3

arrangements but that the frequent and unnecessary drama by the parents during visitation exchanges was not in the children's best interest. The trial court noted that Lieutenant Colonel Burnside had primary custody of his daughter and interviewed K.B.K. and M.A.K. on their desired living arrangements.

The trial court noted that no evidence was provided on J.C.K. and that it could not interview J.C.K. Although the trial court noted it was opposed to splitting up siblings, the trial court thought that, in the best interest of all of the children, K.B.K. and M.A.K. should live in Texas with their father and that J.C.K. should remain with his mother in Colorado. The trial court adjusted child support to reflect the new arrangements and ordered Donald to pay $749 a month for J.C.K. and Cindy to pay $200 a month for K.B.K. and M.A.K. The trial court also ordered Donald to pay for the health insurance coverage of all three children. The trial court noted that the parties were agreed on each parent having one weekend a month for visitation with the children and that the children will have two weekends a month with no travel. The trial court entered its order modifying the parent-child relationship on March 9, 2012, and issued findings of fact and conclusions of law on May 1, 2012. Donald does not appeal the trial court's orders on child support or his wife's visitation with her daughters, but has appealed the trial court's split custody order that had J.C.K. remain with his mother in Colorado.

## II. *Issue Presented*

Donald contends that the trial court abused its discretion when it modified the custody provisions of the divorce decree and ordered that K.B.K. and M.A.K. would live with him in Midland, Texas, but that J.C.K. would reside with Cindy in Colorado Springs, Colorado. Donald argues that the trial court had no evidence or clear and compelling reason that supported its decision on the living arrangements for J.C.K.

4

## III. *Standard of Review*

We review a trial court's decision to modify conservatorship under an abuse of discretion standard. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *Child v. Leverton*, 210 S.W.3d 694, 695 (Tex. App.—Eastland 2006, no pet.). A trial court abuses its discretion if it acts arbitrarily and unreasonably or without regard to guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985). The trial court has wide discretion when it determines issues involving custody. *See Peña v. Peña*, 8 S.W.3d 639, 639 (Tex. 1999); *Gillespie*, 644 S.W.2d at 451. The court's primary consideration always is the best interest of the child. *Child*, 210 S.W.3d at 697.

We apply an abuse of discretion standard to a modification suit, and because the traditional sufficiency standards of review overlap the abuse of discretion standard, we apply a hybrid analysis to the issue asserted by Donald in this case. *See Echols v. Olivarez*, 85 S.W.3d 475, 476 (Tex. App.—Austin 2002, no pet.); *In re D.S.*, 76 S.W.3d 512, 516 (Tex. App.—Houston [14th Dist.] 2002, no pet.). Legal and factual sufficiency challenges to the evidence are not independent grounds of error but are relevant factors to consider in determining whether the trial court abused its discretion, and we use a two-pronged inquiry: (1) whether the trial court had sufficient information on which to exercise its discretion and (2) whether the trial court erred in its application of discretion. *Child*, 210 S.W.3d at 696. Although traditional sufficiency review focuses the initial inquiry, we also determine, based on the evidence, if the court made a reasonable decision. *Id.*

When we analyze the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that supports it. *City of Keller v. Wilson,* 168 S.W.3d 802, 821–22 (Tex. 2005). If the evidence would permit reasonable and fair-minded people to reach

the verdict under review, then the evidence is legally sufficient. *Id.* at 827–28. On a no evidence challenge, we may sustain such a challenge only if:

(1)     the record discloses a complete absence of evidence of a vital fact,

(2)     the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact,

(3)     the only evidence offered to prove a vital fact is no more than a mere scintilla, or

(4)     the evidence conclusively establishes the opposite of a vital fact.

*Id.* at 810.

When we analyze the factual sufficiency of the evidence, we consider and weigh all of the evidence and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *In re King's Estate*, 244 S.W.2d 660, 661 (Tex. 1951).

## IV. *Discussion and Analysis*

Donald contends that the trial court abused its discretion when it modified the custody provisions of the divorce decree and ordered that K.B.K. and M.A.K. would live with him in Midland, Texas, but ordered that J.C.K. would remain with Cindy in Colorado Springs, Colorado. Donald argues there were no clear and compelling reasons to separate the siblings and no evidence to support split custody.

Section 156.101 of the Texas Family Code allows a court to "modify an order that provides for the appointment of a conservator of a child, that provides the terms and conditions of conservatorship, or that provides for the possession of or access to a child if modification would be in the best interest of the child" and if "the circumstances of the child, a conservator, or other party affected by the order

6

have materially and substantially changed" since the date of the rendition of the order. TEX. FAM. CODE ANN. § 156.101(a)(1)(A) (West Supp. 2013). Section 153.251 of the Texas Family Code, titled "Policy and General Application of Guidelines," states a general preference, based on public policy, that "all children in a family . . . be together during periods of possession." *Id.* § 153.251(c) (West 2008). The primary consideration of the court in deciding possession is the best interest of the child. *Id.* § 153.002.

The Code contains no requirement that a party show or trial court find "clear and compelling reasons" for separating children during periods of possession. *See Gardner v. Gardner*, 229 S.W.3d 747, 754 (Tex. App.—San Antonio 2007, no pet.). The policy favoring keeping children together during periods of possession is simply a factor the trial court considers in deciding what is in the child's best interest. *See* FAM. § 153.251(c); *Gardner*, 229 S.W.3d at 754 (citing *In re K.L.R.*, 162 S.W.3d 291, 306 (Tex. App.—Tyler 2005, no pet.), and *MacDonald v. MacDonald*, 821 S.W.2d 458, 463 (Tex. App.—Houston [14th Dist.] 1992, no writ)).

The trial court issued eighteen findings of fact and nine conclusions of law. The relevant findings of fact are as follows:

> 2. Subsequent to the divorce rendered on July 30, 2009, CindyBurnside remarried Jeff Burnside on April 22, 2011, and the couple moved to Colorado Springs, Colorado.
>
> 3. Jeff Burnside is a Lieutenant Colonel in the United States Air Force and has custody of his 8-year-old daughter, Isabella.
>
> 4. Donald Kirk Kimberly is in a relationship with Crystal Wright, who has custody of 2 children (one boy and one girl, age[s] 16 and 13[,] respectively).

5. Donald Kirk Kimbrell utilized most of the visitation in accordance with a prior Standard Possession Order[,] which involved numerous trips to Colorado.

6. Contrary to some of the live testimony in court and due largely to discussions held with children in chambers[,] it appears that all 3 children have adjusted well to the new relationships of both father and mother in Midland and Colorado[, respectively].

7. The son, [J.C.K.] has bonded well with both his stepfather, Jeff Burnside, and his [Burnside's] daughter, Isabella.

8. [J.C.K.] has formed a strong attachment to his new pet puppy in Colorado and has adjusted well to the change in residence from Midland, Texas.

9. The 2 daughters, [K.B.K.] and [M.A.K.] continue to have strong ties with family and friends in Midland, Texas, and it is their sincere desire to live in Midland with their father as long as they can continue to have visitation with their mother.

10. Cindy Burnside has had technical violations of the Decree of Divorce with respect to the morals provisions, medical billings, required forwarding addresses, and visitation periods on certain designated holidays.

11. It would appear to the Court that Cindy Burnside has allowed more liberal visitation with the children's father as opposed to Donald Kirk Kimbrell's rigid adherence to the Standard [Possession] Order in the past.

12. Cindy Burnside has discontinued her use of prescribed medications after her move to Colorado and her marriage to Jeff Burnside.

13. It is in the best interest of the children that Donald Kirk Kimbrell and Cindy Burnside be appointed joint managing conservators of the children and that Donald Kurt (sic) Kimbrell have the right to designate the daughters'[,] [K.B.K.] and [M.A.K.'s,]

primary residence. Cindy Burnside shall have the right to designate [J.C.K.'s] primary residence.

14. The periods of possession vary from the Standard Possession Order for the following reasons:

(a) The presumption of keeping the siblings together is overcome by the sincere desire that the daughters have with respect to their return to Midland combined with a positive relationship made by the son with respect to the stepfather, his [stepfather's] daughter, and the son's pet in Colorado.

(b) The parties live approximately 10 to 12 hours driving time from each other leaving very little time for visitation on weekends.

(c) The split custody arrangement necessitates monthly alternative one-weekend visitation by the parents in order to give both sets of children some stability and prevent them from some form of travel on every weekend during the month.

(d) The arrangement within the judgment will allow each parent at least one protected weekend with all children and further allow the children at least two weekends without travel.

(e) The deviation from the Standard Possession Order also allows and encourages visitation by all 3 siblings together.

The relevant conclusions of law are as follows:

1. The circumstances of all of the children and both parents affected by the prior Decree of Divorce have materially and substantially changed since the rendition of the divorce.

2. Child support, possession and access should be modified as it is in the best interest of the children to do so.

9

3.  Donald Kirk Kimbrell and Cindy Burnside (formerly Cindy Kimbrell) should be named joint managing conservators of the children with the rights and duties stated in the judgment, and Donald Kirk Kimbrell should be named as the conservator with the right to designate both daughters' primary residence, and Cindy Burnside should be named as the conservator with the right to designate the son's primary residence.

4.  There is clear and convincing evidence that split custody involving a split of the siblings between the parents would be in the best interest of the children and Donald Kirk Kimbrell is entitled to periods of possession and access as stated in the judgment and Cindy Burnside is entitled to possession and access as stated in the judgment.

Findings of fact in a case tried to the court have the same force and dignity as a jury's verdict upon jury questions. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence using the same standards applied in reviewing the sufficiency of the evidence underlying jury findings. *Id.*

A party may not challenge conclusions of law for factual sufficiency, but we may review conclusions of law to determine their correctness based upon the facts. *Rischon Dev. Corp. v. City of Keller*, 242 S.W.3d 161, 167 (Tex. App.—Fort Worth 2007, pet. denied). We will uphold a conclusion of law if the judgment can be supported on any legal theory supported by the evidence. *Id.* at 167; *Tex. Dep't of Pub. Safety v. Stockton*, 53 S.W.3d 421, 423 (Tex. App.—San Antonio 2001, pet. denied). We review conclusions of law de novo, and we will not reverse unless they are clearly erroneous as a matter of law. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Rischon Dev. Corp.*, 242 S.W.3d at 167.

The trial court appointed Donald and Cindy as joint managing conservators and split the custody of the children between them, in large part, due to the sincere

desire of the two daughters to live in Midland with their natural father. In a joint managing conservatorship, the trial court must designate which managing conservator will have the exclusive right to designate the child's primary residence. FAM. § 153.134(b)(1); *Gardner*, 229 S.W.3d at 753. The paramount consideration is the best interest of the child. FAM. § 153.002; *Gardner*, 229 S.W.3d at 753; *Albrecht v. Albrecht*, 974 S.W.2d 262, 265 (Tex. App.—San Antonio 1998, no pet.).

Both Cindy and Donald presented evidence of the other's faults and presented evidence they were devoted parents that loved their children and only wanted what was best for each of them. The trial court heard evidence of Cindy's failure to adhere to several provisions of the divorce decree and Donald's rigid application of the decree's standard possession order. The trial court heard evidence that the children had some trouble with the new living arrangements, and it interviewed both of the daughters and solicited their sincere desires about where they wanted to live. The trial court also heard evidence about the parents' relationships with their children; the parents' relationships with their new spouse or significant other and their children; and the children's relationships with their new stepparents and stepsiblings.

The trial court heard evidence of the current and proposed living arrangements in Texas and Colorado and the current and proposed school arrangements for the children. The trial court heard about J.C.K.'s attachment to his new puppy and his bond with his stepfather and heard from K.B.K. and M.A.K. and others about the daughters' friends and activities and their family roots and connections in Midland. Donald testified about the trips he took to visit his children in Colorado and be present in their lives there.

The trial court noted that, at the time of decree in 2009, everyone lived in Midland, Cindy was not married to Lieutenant Colonel Burnside, and Donald was

11

not in a relationship with Wright. The trial court learned about Lieutenant Colonel Burnside's background and work and his custody of his daughter, Isabella. The trial court also heard about Wright's custody of her two children. The trial court heard evidence on revising child support and visitation.

The trial court reviewed and weighed all of this evidence and noted the children were well-adjusted to the new familial relationships and that K.B.K. and M.A.K. sincerely wanted to return to Midland. The trial court noted it had not heard much information about J.C.K., but concluded he had adjusted well to home and school in Colorado, had bonded with his stepfather, and was very attached to his new puppy. The trial court, as factfinder, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See City of Keller*, 168 S.W.3d at 819.

After reviewing the record, we conclude the trial court had sufficient information to exercise its discretion and did not abuse that discretion in finding it was in the children's best interest that K.B.K. and M.A.K. live with their father in Midland and that J.C.K. remain with his mother in Colorado. *See Gardner*, 229 S.W.3d at 753–54; *see also Sotelo v. Gonzales*, 170 S.W.3d 783, 787 (Tex. App.— El Paso 2005, no pet.); *In re Gonzalez*, 993 S.W.2d 147, 155 (Tex. App.—San Antonio 1999, no pet.) (holding abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support trial court's decision). We find that some evidence of substantive and probative character supports the trial court's decision, and we overrule Appellant's single issue.

## V. *This Court's Ruling*

We affirm the judgment of the trial court.

MIKE WILLSON

JUSTICE

March 27, 2014

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.