Opinion filed February 28, 2022



In The

# Eleventh Court of Appeals

———————

## No. 11-20-00044-CV

———————

## IN THE MATTER OF THE GUARDIANSHIP OF STACY JAMES BROWNING

**On Appeal from the 132nd District Court**
**Scurry County, Texas**
**Trial Court Cause No. 26683**

## O P I N I O N

This appeal arises from a Motion in Intervention and Application to Remove Guardian filed by Appellants, Creekside Rural Investments, Inc., Manor Ranches, LTD., and Jay Dickens. It follows an order from the 132nd District Court of Scurry County, Texas, denying Appellants' (Intervenors') motion in intervention and granting the Guardian's motion in limine, motion to strike, and motion for sanctions—which imposed the cost of attorneys' fees against Appellants.

On appeal, Appellants raise eleven issues. In their first and second issues, Appellants argue that Section 1055.001 of the Texas Estates Code is not applicable to this case and allege that the trial court erred in granting the Guardian's motion in limine. In their third, fourth, fifth, sixth, eighth, and ninth issues Appellants allege error in the trial court's conclusions of law. Appellants argue in their seventh issue that the trial court erred in applying Rule 60 of the Texas Rules of Civil Procedure when it ruled on the Guardian's motion to strike. In their tenth issue, Appellants allege the trial court abused its discretion in denying their motion in intervention. And in their final issue on appeal, Appellants allege that the trial court abused its discretion in granting the Guardian's motion for sanctions. We overrule Appellants' first, second, third, fourth, fifth, sixth, and seventh issues as moot.

This case is related to a subsequent, additional appeal filed in this court by Appellants: Cause No. 11-20-00254-CV.[1] Both appeals concern the guardianship and the proceedings in this case. Additionally, the Ward passed away in July 2021, and any issues on the merits of the relief sought by Appellants for the removal of the Ward's mother as the guardian of the Ward's person are moot and will not be entertained by this court.[2] *See Zipp v. Wuemling*, 218 S.W.3d 71, 74 (Tex. 2007) ("It is axiomatic that, with the death of the ward, the guardianship of the person must end."); *see also Alford v. Halbert*, 12 S.W. 75, 76 (Tex. 1889) ("Death of the ward necessarily terminates the guardianship." (quoting *Fortson v. Alford*, 62 Tex. 576, 580 (1884))).

---

[1]*Creekside Rural Investments, Inc., Manor Ranches, LTD, & Jay Dickens v. Dan Hicks and Pam Browning.*

[2]We received letter briefs in January 2022 from all parties to this lawsuit, and related cause No. 11-20-00254-CV, regarding the death of the Ward. We proceed on all issues that are not moot following the Ward's death.

*Factual and Procedural History*

In the 1980s, Stacy James Browning (the Ward) suffered a serious head injury that left him incapacitated and wheelchair bound. A guardianship was created, and the Ward's father served as the guardian until he passed away in 2015. Following the death of the Ward's father, the Ward's mother was appointed by the court as guardian of the Ward's person and estate. Prior to the Ward's father's death, in 2007, the estate acquired approximately 900 acres of real property located in Liberty Hill, Williamson County, Texas. Approximately 80 acres of this property was then leased to M. Grantham Enterprises, LLC, d/b/a Best of the West Shooting Sports, for the operation of a gun range. This lease and its use as a gun range was approved by order of the County Judge in the guardianship proceeding of the Ward. The gun range, which opened in 2009, was owned by Millard Grantham (Millard), the brother-in-law of the Ward.

In 2017, Manor Ranches, LTD (Manor) purchased real property in Williamson County, Texas, north of the property owned by the Ward's estate, for the purpose of low-key residential development. At the time Manor purchased this property, the gun range was in operation. Creekside Rural Investments, Inc. (Creekside) is the general partner of Manor, the limited partners being Jay Dickens (Dickens), his wife Dana, his brother Joel, and his brother's wife Holly. Dickens is the president of and directs all the business of Creekside; he and his wife own Creekside. Dickens also receives a financial benefit from Manor and, as the president of Creekside, is the primary decision maker for Manor. Collectively, Manor, Creekside, and Dickens are the Appellants/Intervenors in this case.

*Williamson County Lawsuit*

In 2018, Creekside and Manor commenced a lawsuit in Williamson County asserting that bullets from the gun range had landed on their property (Williamson

County Lawsuit).[3] The lawsuit was filed against the gun range, Millard, and the Ward, in his individual capacity as the owner of the property.[4] Creekside and Manor asked for a permanent injunction against the defendants to prohibit the operation of a gun range on the Ward's property, as well as monetary damages. In December 2018, a preliminary injunction was issued against the defendants in the Williamson County Lawsuit, prohibiting the firing of all rifles at the gun range.

Following the grant of the temporary injunction, on February 12, 2019, Appellant Dickens personally wrote a letter to the Ward. In the letter, Dickens refers to a statement posted by Millard on social media which indicated that "a judge [had] order[ed] the temporary closing of the Rifle Range" and that there were attempts being made to allow the range to reopen. The social media statement also indicated that growth around the range could prevent its reopening. Dickens asserted in this letter that he did not believe Millard and that he was unhappy the statement did not characterize the "issues as a . . . dangerous safety problem." Dickens continued in the letter with a list of what he determined to be "risks" posed by the gun range. There are also statements of what actions Dickens would take if he were the owner of the property. He ended the letter with a threat to seek "maximum damages" should the Ward not cooperate. ("Shortly . . . I will not be inclined to listen to proposals that do not involve maximum damages. . . . Should you wish to have a common-sense discussion, please let me know.") The Ward, being incapacitated, did not respond to the letter from Dickens, and Dickens, upon discovering that Stacy

---

[3]*Creekside Rural Investments, Inc. & Manor Ranches, LTD. v. M. Grantham Enterprises, LLC d/b/a Best of the West Shooting Sports, Stacy J. Browning & Millard Grantham*, Cause No. 18-0587-C368, pending before the 368th Judicial District Court of Williamson County, Texas. At the time of the hearing in Scurry County, the case had not proceeded to trial in Williamson County, and no judgment had been issued either in favor of the plaintiffs or against the Ward.

[4]Appellant Dickens indicates that at the time the Williamson County Lawsuit was filed, he was not aware that Stacy J. Browning was incapacitated, living in a nursing home, and a guardian had been appointed for the care of his person and management of his estate.

J. Browning was a Ward, sent three additional letters to Stacy's mother (the Guardian).

Dickens sent letters to the Guardian, dated April 25, 2019, May 1, 2019, and August 29, 2019. The April letter indicated that Dickens had recently discovered that Stacy was incapacitated and expressed concern that the Guardian may not have been well informed of the Williamson County Lawsuit. On May 1, 2019, less than a week later, Dickens sent another letter to the Guardian, referring to an "enclosed copy" of the State of Texas Code of Ethics for the management of estates. It intimated that by allowing the gun range to operate on land leased by the Ward, the Guardian was in violation of the code of ethics that Dickens had enclosed.

*Motion in Intervention*

In the final August 29, 2019 two-page letter, Dickens again personally contacted the Guardian. While Dickens acknowledged that progress had been made to mitigate the "present dangers at the [gun] range," he also indicated to the Guardian that he still had issues with how matters were being handled. Dickens also informed the Guardian that he was including an article about two children who were wounded "under similar conditions." He told the Guardian that her acts had allowed for "extreme lead damage" to the Ward's property and implied to the Guardian that these allegations could result in her removal as guardian by the court. ("[T]here is a distinct possibility that a judge would consider removing you as Guardian and find a replacement with a more appropriate set of management skills.") In Dickens's final point, he suggested that if the Guardian would agree to "[o]pen and immediate communication," it "could . . . limit[ ] the consequences to [the Guardian], Millard, and the Estate."

Dickens admitted that the Guardian's attorney had recently reached out to his own counsel, but he disregarded the attorney's communication because he somehow suspected that it was disingenuous. Despite statements that Dickens desired open

5

and honest communication, Dickens, Manor, and Creekside filed their motion in intervention on August 8, 2019—almost three weeks before the third letter had been sent. This motion was filed in the County Court of Scurry County, Texas, and later transferred to the 132nd Judicial District Court on August 9, 2019. The Guardian's motion in limine, motion to strike, and motion for sanctions were filed on October 4, 2019. A hearing took place on these motions on November 8, 2019.

Prior to the November hearing in the 132nd District Court, there was a hearing in the Williamson County Lawsuit in August 2019. At this hearing, M. Grantham Enterprises, LLC, through counsel, announced that it would be shutting down the gun range on or before September 29, 2019. At the time of the November hearing, the gun range had been shut down and there were no complaints raised that this had not been completed by September 29. On October 2, 2019, one month before the hearing in Scurry County, Dickens filed a complaint with Adult Protective Services (APS), alleging that there was a ward who was possibly being exploited by his guardian. Five days later, on October 7, 2019, APS Specialist Charissa Beggs-Hilder determined that there was no further need to investigate the issue and she closed the investigation.

On November 8, 2019, the Guardian testified during the hearing on the motion in intervention, motion in limine, motion to strike, and motion for sanctions that she felt worried, scared, and threatened by the letters from Dickens. Dickens additionally admitted that he believed that the gun range had already been shut down and that he had no knowledge of any continued dangers from the gun range except that, without a permanent injunction, it *could* happen again.[5]

---

[5]During the oral argument before this court, counsel for the Guardian acknowledged that the property where the gun range was located had been sold and that the sale included a covenant to prevent any operation of a gun range on the property in the future.

The trial court denied Appellant's motion in intervention and granted the Guardian's motion in limine, motion to strike, and motion for sanctions. Counsel for the Guardian submitted an Affidavit of Attorneys' Fees and Costs of Court on December 6, 2019. Though Appellants filed a motion to modify the trial court's order, the amount of the attorneys' fees set forth in the affidavit, and adjudged reasonable by the trial court, was never challenged.

*Analysis*

We group the issues presented by Appellants according to their substantive merits, rather than the manner in which the issues are enumerated in the Appellants' brief. We first address whether the trial court abused its discretion when it denied Appellants' motion in intervention (issue ten). We next address the issues relating to the imposition of sanctions and the award of attorneys' fees to the Guardian (issues eight, nine, and eleven).

    *I. The trial court did not abuse its discretion when it denied Appellants' Motion in Intervention.*

Appellants claim that they can properly intervene in the guardianship under Section 1055.003, titled "Intervention by Interested Person." TEX. EST. CODE ANN. § 1055.003 (West 2020). Section 1055.003(a) provides that "an interested person" may intervene in a guardianship proceeding by filing a motion to intervene. Assuming, without deciding, that Appellants' position was that of an interested person, the discretion of the trial court to grant or deny their motion to intervene is clear. Section 1055.003(c) provides:

> The [trial] court has the discretion to grant or deny the motion [to intervene] and, in exercising that discretion, must consider whether:
>
>     (1) the intervention will unduly delay or prejudice the adjudication of the original parties' rights; or
>
>     (2) the proposed intervenor has such an adverse relationship with the ward or proposed ward that the

7

intervention would unduly prejudice the adjudication of the original parties' rights.

Here, we examine the plain language of the statute and its context to construe its meaning. *Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 562 (Tex. 2014). Importantly, there is no limiting language in subsection (c) that would prohibit the trial court from weighing *more* than just (c)(1) or (c)(2) in exercising its discretion. And there is no requirement on what weight the trial court must give any consideration. The statute gives the trial court discretion to either grant or deny the motion, and in doing so, it must also not fail to consider the potential undue delay or prejudice that the intervention would have on the adjudication of the original parties' rights as determined under (c)(1) or (c)(2). EST. § 1055.003(c). The record shows that the trial court complied with Section 1055.003(c). The trial court specifically referenced Section 1055.003(c)(1) and (2) in its conclusions of law.

While the trial court's discretion must be inclusive of the two factors listed in the statute, it is not limited to the consideration of these factors in exercising its discretion to grant or deny a motion to intervene of an interested party. The trial court might refer to other sections of the statute or other evidence presented in the proposed intervention in exercising its discretion. For example, Section 1055.001 includes actions that may not be taken by a "person who has an interest that is adverse to a proposed ward or incapacitated person" including "contest[ing] the appointment of a person as a guardian." *Id.* § 1055.001(b)(1)–(4). Accordingly, in exercising its discretion, a trial court may also consider the adverse interests of persons seeking to intervene. In this matter, because there was ample evidence before the trial court that showed an indicia of Appellants' bad faith—including the letters sent by Dickens and the trial court's own findings of improper purpose and

bad faith[6]—we cannot say that the trial court abused its discretion under Section 1055.003(c) in denying Appellants' intervention. Accordingly, we overrule Appellants' tenth issue.

## II. Sanctions—Conclusions of Law in Support of the Trial Court's Order

In Appellants' eighth and ninth issues, they allege that the trial court erred in its conclusions of law as related to the award of sanctions. The challenged conclusions of law state: "Intervenors brought their Motion in Intervention in bad faith for the purposes of extracting a remedy . . . [sought] in the Williamson County lawsuit," and "Intervenors brought their Motion in Intervention for the purposes of harassing the Guardian and the guardianship." Appellants assert that these conclusions are not supported by legally or factually sufficient evidence and are wholly unjustified.

Appellate courts review a trial court's conclusions of law as a legal question. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). A party may not challenge conclusions of law for factual sufficiency, but we may review conclusions of law to determine their correctness based upon the facts. *Id.*

"We will uphold a conclusion of law if the judgment can be supported on any legal theory supported by the evidence." *Rischon Dev. Corp. v. City of Keller*, 242 S.W.3d 161, 167 (Tex. App.—Fort Worth 2007, pet. denied); *Tex. Dep't of Pub. Safety v. Stockton*, 53 S.W.3d 421, 423 (Tex. App.—San Antonio 2001, pet. denied). We review conclusions of law de novo, and we will not reverse unless they are clearly erroneous as a matter of law. *In re K.B.K.*, No. 11-12-00155-CV, 2014 WL 1285784, at *6 (Tex. App.—Eastland Mar. 27, 2014, no pet.) (mem. op.) (citing *Marchand*, 83 S.W.3d at 794; *Rischon Dev. Corp.*, 242 S.W.3d at 167)).

---

[6]See further this opinion's discussion under II and III, *infra*.

However, when a conclusion of law is actually a finding of fact, we are not bound to treat the "conclusion of law" only as a conclusion of law. *See Ray v. Farmers' State Bank of Hart*, 576 S.W.2d 607, 608 n.1 (Tex. 1979) (where a finding of fact is contained in a conclusion of law, the trial court's designation is not controlling on appeal). Here, when the trial court pronounced its finding on the record—that the motion in intervention was brought "in bad faith . . . [and] for the purpose of extracting an advantage in another lawsuit," the trial court cited the letters sent by Dickens to the Guardian as evidence that the lawsuit was brought in bad faith or for purposes of harassment. In its modified order, the trial court specified that there was a bad faith purpose to extract a remedy in the Williamson County Lawsuit and that the lawsuit was brought for the purpose of harassing the Guardian.

Although the trial court did not point to the specific parts of Dickens's letters that support its findings, there is sufficient evidence in the record to support the trial court's findings. The trial court, as the finder of fact, concluded from the evidence that the motive in bringing the motion in intervention was to gain an advantage in the Williamson County Lawsuit and for the purpose of harassing the Guardian. Dickens made statements in the August 29 letter that the consequences to the defendants in the Williamson County Lawsuit could be limited with open and immediate communication, while on the same page, threatening to "move forward" if the Guardian did not respond in obeisance to Appellants. Dickens, in the same breath, both acknowledged and disregarded *actual* communication by the Guardian's lawyer to his own lawyer as *possibly* disingenuous. Dickens's statements to the Guardian, that her management skills were inappropriate and that she could be replaced by a court, could legitimately be construed by the trial court as a veiled threat—again hoping to use the Scurry County district court to get what Appellant wanted in Williamson County. Further, Dickens made these statements

10

*after* filing the motion in intervention in Scurry County, an act that fails to support the claim that he desired to work things out with "open and honest communication."

The letters also include veiled threats regarding ethical violations and enhanced "consequences," articles detailing harm to children near a gun range,[7] allegations of lead poisoning, and a complete refusal to accept the steps that were taken by defendants in the Williamson County Lawsuit as genuine or "enough." In addition to the evidence in the letters, at the November hearing, Dickens testified that the gun range had been shut down and that he was unaware of it reopening following the shutdown. Dickens had not visited the gun range since its closure, and he emphasized that he was primarily concerned that it "could" reopen again without a permanent injunction.

"A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). The temporary injunction entered by the district court in Williamson County will remain in effect until there is a final judgment and it is either then made permanent, is lifted, or there is a permanent modification to the injunction terms. But it is disingenuous to claim a need to seek relief before the Scurry County district court when the Williamson County district court, which possessed dominant jurisdiction, had previously entered a temporary injunction pending a final judgment.

At least a partial resolution of the Williamson County Lawsuit was achieved prior to the guardianship hearing.[8] Despite this progress toward complete resolution, Appellants moved forward as if the alleged dangers to the Ward were still live and

---

[7]It is conceivable that the trial court could view such portions of the letter as particularly cruel and threatening in light of the Guardian's own son—the Ward—having suffered a traumatic injury as a child.

[8]The Williamson County Lawsuit was originally brought to shut down the gun range and for damages suffered by the plaintiffs.

the Guardian was recklessly careless about such dangers. Importantly, the gun range was shut down before Appellants made a complaint to Adult Protective Services (APS), and the complaint itself stemmed from issues involving the gun range, without raising any additional allegations concerning the fitness of the Guardian. There was likewise no finding of Guardian abuse or misuse by APS in this investigation. Although the investigation was closed the same week that the complaint was received, the complaint was not withdrawn. Further, the trial court submitted findings of fact, including a finding that, other than Appellants, there had been no accusations of Guardian mismanagement of the Ward's financial affairs.

All of these actions, and the timing of them in conjunction with the letters sent to the Guardian, provide *some* evidence of improper purpose and harassment. Because neither of these conclusions of law can be termed "clearly erroneous as a matter of law" and are supported by the evidence, we overrule Appellants' eighth and ninth issues.

### III. Sanctions—Some Evidence of Bad Faith and Improper Purpose

In their final issue, Appellants allege that the trial court abused its discretion in granting the Guardian's motion for sanctions. Their eighth and ninth issues are related to the motion for sanctions, because in each, Appellants assert that the trial court erred in entering conclusions of law that Appellants brought their motion in intervention in bad faith for the purpose of extracting a remedy in Williamson County and harassing the Guardian. "Various rules and statutes imbue courts with authority to sanction attorneys for professional lapses of one kind or another with or without bad faith." *Brewer v. Lennox Hearth Prods., LLC*, 601 S.W.3d 704, 717–18 (Tex. 2020) (citing *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997)). "Courts also possess inherent powers that aid the exercise of their jurisdiction, facilitate the administration of justice, and preserve the independence and integrity of the judicial system." *Id.* at 718.

*A. Standard of Review*

We review a trial court's imposition of sanctions under an abuse of discretion standard. *Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 361 (Tex. 2014) (citing *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007)). When sanctions are imposed pursuant to Chapter 10 of the Texas Civil Practice and Remedies Code or Rule 13 of the Texas Rules of Civil Procedure, both are reviewed under this standard. *Id.* "A sanctions award will not withstand appellate scrutiny if the trial court acted without reference to guiding rules and principles to such an extent that its ruling was arbitrary or unreasonable." *Id.* (citing *Cire v. Cummings*, 134 S.W.3d 835, 838−39 (Tex. 2004)). "A sanctions award that fails to comply with due process constitutes an abuse of discretion because a trial court has no discretion in determining what the law is or applying the law to the facts." *Id.*; *see TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991); *Huie v. DeShazo*, 922 S.W.2d 920, 927 (Tex. 1996). "But we will not hold that a trial court abused its discretion in levying sanctions if *some* evidence supports its decision." *Nath*, 446 S.W.3d at 361 (emphasis added) (citing *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009)). "Generally, courts presume that pleadings and other papers are filed in good faith." *Id.* (citing *GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 730 (Tex. 1993)). "The party seeking sanctions bears the burden of overcoming this presumption of good faith." *Id.* (citing *Tanner*, 856 S.W.2d at 731).

Chapter 10 of the Texas Civil Practice and Remedies Code provides that sanctions are allowed if pleadings (1) are filed with an improper purpose or (2) lack legal or factual support. *Nath*, 446 S.W.3d at 362. Section 10.001 provides that, upon signing a pleading or a motion, the signatory attests that:

> (1) the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and]

(3) each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

TEX. CIV. PRAC. & REM. CODE ANN. § 10.001 (West 2017). A specific violation under Section 10.001 is grounds for a party to make a motion for sanctions under Section 10.002, and a court that determines that a person has signed a pleading or motion in violation of Section 10.001 may impose a sanction. *Id.* §§ 10.002(a), 10.004(a). "A sanction may include . . . an order to pay to the other party the amount of the reasonable expenses incurred by the other party because of the filing of the pleading or motion, including reasonable attorney's fees." *Id.* § 10.004(c)(3).

### B. Analysis

To determine if Appellants violated Section 10.001, we first determine if the trial court's finding is supported by *some* evidence, and if it is, there is no abuse of discretion. *Nath*, 446 S.W.3d at 365. As stated in our analysis on the conclusions of law, the trial court pronounced findings on the record that the motion in intervention was brought "in bad faith . . . [and] for the purpose of extracting an advantage in another lawsuit." The letters sent by Dickens provide evidence that the motion in intervention was brought in bad faith or for an improper purpose. Attempting to extract a remedy in Williamson County—which Appellants all but admit to in their motion in intervention—is an improper purpose for an intervention in a guardianship estate.[9] There is at the very least, *some* evidence, that supports the

---

[9]Appellants specifically request injunctive relief from the trial court in Scurry County: "Intervenors ask that this Court issue a temporary injunction and ultimately a permanent injunction requiring Pam Browning to prohibit the operation of the Range on the Range property."

trial court's finding. Therefore, the trial court did not abuse its discretion when it awarded sanctions.[10]

Appellants argue that the imposition of sanctions by the trial court was unsupported by legally or factually sufficient evidence and that the trial court did not provide adequate reasoning to support the imposed sanctions.[11] We disagree. Under Chapter 10, if the pleadings are filed with an improper purpose, the imposition of sanctions is permitted. *See* CIV. PRAC. & REM. §§ 10.001, 10.004. Improper purpose, as found by the trial court, includes extracting an advantage in the Williamson County Lawsuit. As discussed in our analysis of Appellants' eighth and ninth issues, there is sufficient evidence in the record to support the trial court's finding that the motion in intervention was brought to gain an advantage in the Williamson County Lawsuit and for the purpose of harassing the Guardian. This is sufficient to show at least *some* support for the trial court's ruling under Chapter 10.

Importantly, in Appellants' response to the motion for sanctions submitted on December 27, 2019, they argue only that sanctions for post-judgment motions and appeals were inappropriate, as was the award of post-judgment interest. Appellants made no objection to the trial court's finding that the Scurry County suit was brought for the purpose of exacting a remedy in Williamson County or to harass the Guardian, nor did Appellants make any allegation that the trial court's decision was

---

[10]In the Guardian's motion for sanctions, she pointed to both Rule 13 of the Texas Rules of Civil Procedure and Chapter 10 of the Texas Civil Practice and Remedies Code. The trial court does not specify under which rule it granted the motion. Because the award of sanctions can be upheld under Chapter 10 of the Texas Civil Practice and Remedies Code, we need not also consider the application of Rule 13.

[11]Appellants contend that they were unable to present information in their case that would combat the finding of bad faith or improper purpose. However, Appellants are largely complaining that they were unable to present evidence regarding the *purpose* of the intervention, when at the start of the November 2019 hearing, the parties and the trial court agreed to limit the hearing to the Intervenors' right to intervene, rather than the substance of the intervention itself.

based on the pleadings alone. Despite Appellants' potential waiver,[12] there is further evidence in the record that supports the trial court's findings.

As discussed *supra*, the letters that Dickens sent to the Guardian included veiled threats, intimidation, and assailed the Guardian's ethics, by detailing enhanced "consequences," should the Guardian fail to respond or do what Appellants were asking for in Williamson County. But Dickens testified, and therefore he knew, that the gun range had been shut down and he stated that he was unaware of it ever reopening after it shut down. Dickens alleged before the Scurry County District Court that his primary concern was that the range "could" reopen again without a permanent injunction. The petition in intervention, therefore, requested that the Scurry County court issue a permanent injunction, which was a result sought—but not yet granted—by the Williamson County District Court.

The motion in intervention was pursued and argued to the trial court as if the Guardian was continuing to enable alleged dangers to the Ward and the estate, when in reality, no such future dangers were either threatened or imminent. The Appellants alleged no other issues as to the Guardian's fitness and yet Appellants' motion to intervene sought removal of the Ward's mother as guardian of both his person and estate.

There was likewise no finding of abuse or misuse by the Guardian in the Adult Protective Services investigation. In addition to all reasons set forth in our analysis of Appellants' eighth and ninth issues, the trial court submitted detailed findings of

---

[12]Courts view the failure to make a proper objection to the form of the sanctions order as a waiver to any objection regarding an absence of a finding as to bad faith or harassment under Rule 13 of the Texas Rules of Civil Procedure. *See Gomer v. Davis*, 419 S.W.3d 470, 478 (Tex. App.—Houston [1st Dist] 2013, no pet.); *Robson v. Gilbreath*, 267 S.W.3d 401, 407 (Tex. App.—Austin 2008, pet. denied); *Appleton v. Appelton*, 76 S.W.3d 78, 87 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *Tex.-Ohio Gas, Inc. v. Mecom*, 28 S.W.3d 129, 135 (Tex. App.—Texarkana 2000, no pet.). Due to the similar requirement that both Rule 13 and Chapter 10 have with respect to an explanation by the trial court when imposing sanctions, we use a similar analysis here. *See* CIV. PRAC. & REM. § 10.005; TEX. R. CIV. P. 13.

fact, including a finding that, other than Appellants, there had been no accusations of mismanagement of the Ward's financial affairs by the Guardian.

All of these actions, and the timing of them in conjunction with the letters of intimidation sent to the Guardian, provide—at minimum—*some* evidence of improper purpose and harassment. Viewed in a light most favorable to the trial court's rulings as the finder of fact, the presumption that Appellants filed the pleadings and documents discussed above in good faith was overcome by what the trial court perceived to be a progressive, menacing threat to the Guardian. This is particularly demonstrated in the letter to the Guardian dated August 29, 2019—three weeks after the filing of the petition in intervention. The petition in intervention follows through on those threats and requested removal of the Guardian. Revealingly, paragraphs No. 45 and No. 47 in the petition request injunctive relief that is directed at Appellants' Williamson County complaints.

We hold that the trial court did not abuse its discretion when it imposed sanctions against Appellants. The sanctions are permissible and supported by the record before us. The reasonableness of the sanction amount was not contested or briefed by Appellants on appeal.[13] Therefore, we overrule Appellants' eleventh issue.

### This Court's Ruling

We hold that the trial court did not abuse its discretion when it denied Appellants' motion in intervention. We also hold that the trial court did not abuse

---

[13]We decline to address the reasonableness of the sanctions imposed because Appellants failed to raise the issue on appeal and because "proof of the necessity or reasonableness [of] attorney's fees is not required when the fees are assessed as sanctions." *Sellers v. Gomez*, 281 S.W.3d 108, 116 (Tex. App.—El Paso 2008, pet. denied) (citing *Gorman v. Gorman*, 966 S.W.2d 858, 868–69 (Tex. App.—Houston [1st Dist.] 1998, pet. denied)). "Rather, the amount of attorney's fees awarded as sanctions is within the sound discretion of the trial court." *Id.* Based on evidence of the past and future fees of the Guardian's attorneys, CR136-138 we do not find the sanctions imposed by the trial judge to be excessive or a clear abuse of discretion.

its discretion when it imposed sanctions against Appellants. Because Appellants' first, second, third, fourth, fifth, sixth, and seventh issues are moot, any further discussion of those issues is not "necessary to [the] final disposition of the appeal." *See* TEX. R. APP. P. 47.1. Having addressed the issues that are necessary to the disposition of this appeal, we affirm the order of the trial court.

W. BRUCE WILLIAMS
JUSTICE

February 28, 2022

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.