

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-22-00130-CV

**CONSOLIDATED TOWNE EAST HOLDINGS, LLC**,
Appellant

v.

**THE CITY OF LAREDO**, Joseph Neeb in His Official Capacity as City Manager, and Arturo
Garcia, Jr. in His Official Capacity as Director of City of Laredo Utilities,
Appellees

From the 406th Judicial District Court, Webb County, Texas
Trial Court No. 2020CVK001518D2
Honorable Monica Z. Notzon, Judge Presiding

**OPINION ON MOTION TO MODIFY THE JUDGMENT**

Opinion by:     Rebeca C. Martinez, Chief Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Irene Rios, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: July 12, 2023

AFFIRMED AS MODIFIED

Consolidated Towne East Holdings, LLC ("Consolidated") sued the City of Laredo (the

"City") in an effort to develop land in the City's extraterritorial jurisdiction.  Consolidated sought

water and sewer services from the City as part of its proposed development.  However, before the

City would provide these services, it required annexation.  Consolidated contends that this

precondition for water and sewer services amounts to an unconstitutional taking and that denial of

services is an *ultra vires* act by the City Manager and the City's Director of Utilities.[1] The trial court dismissed Consolidated's claims with prejudice, and it appealed.

In an opinion issued on May 24, 2023, we affirmed. Thereafter Consolidated timely filed a motion to modify the judgment. We grant Consolidated's motion, withdraw our opinion and judgment issued on May 24, 2023, and substitute this opinion and judgment in its place. By this opinion and judgment, we modify the trial court's judgment to dismiss *without prejudice* Consolidated's regulatory takings claim and challenge to the validity of a city ordinance. We otherwise affirm the trial court's judgment.

## BACKGROUND

Consolidated owns three tracts of land in an "economically distressed area," formally occupied by a colonia, outside of the City. *See* TEX. WATER CODE ANN. § 17.921(1) (defining "economically distressed area" for purposes of Texas Water Code, Subchapter K); *Flores v. Millennium Interests, Ltd.*, 185 S.W.3d 427, 434 (Tex. 2005) (Wainwright, J., concurring) ("The colonias are substandard, generally impoverished, rural subdivisions that typically lack basic utilities and other infrastructure.").

In 1995, Webb County and the City entered into an Interlocal Government Agreement. The general purpose of this agreement was to provide water and sewer connections to residents in fifteen colonias, located outside city limits, and to establish city-county cooperation to apply for grant money to achieve this end. One of these fifteen colonias was situated on Consolidated's tracts. In 2003, eight of the fifteen colonias landowners entered into a Participation Agreement with the City. Consolidated was not among these eight. The City and the participating landowners decided to "oversize" the water and sewer lines that were to be built to meet future development

---

[1] These city officials are sued in their official capacities; therefore, we have substituted the current City Manager and the current Director of Utilities automatically, in place of their predecessors, pursuant to Rule 7.2 of the Texas Rules of Appellate Procedure. *See* TEX. R. APP. P. 7.2(a); *see, e.g.*, *Tex. Ass'n of Cnty. Emps. v. Wolff*, 583 S.W.3d 828 (Tex. App.—San Antonio 2019, pet. denied).

needs. The Participation Agreement provided for the landowners to contribute approximately $800,000 to oversize the lines. In return, the Participation Agreement created Living Unit Equivalences ("LUEs"), which were allocated to each participating landowner, to allow development up to the limit imposed by the number of LUEs allocated. In general, one LUE equates to the consumption of water and the discharge of wastewater attributable to one single-family residence. This measure is used for planning capital improvements to serve new development.[2]

The Participation Agreement also states: "Within five (5) years of the date of execution of this Agreement Landowners should apply to the City for annexation[.]" Further, the Agreement provides:

> ANNEXATION. No Landowner can use any part of this allocation until such time as the parcel or portions thereof described in the relevant Exhibit A owned by him/her is annexed to the City of Laredo . . . . This shall not be interpreted to prohibit the use of these LUEs in unincorporated properties as provided in Section 31-3 of the City of Laredo Code of Ordinances.

In 2007, the City authorized the City Manager to sell excess water and sewer capacity from the oversizing effort to non-participating landowners in the form of LUEs. In 2011, the City passed an ordinance authorizing the Utilities Department to increase the cost per LUE at a rate of two percent per year.

Consolidated proposed redevelopment of its three tracts in 2016. Its proposal called for the replatting of the three tracts into approximately seventy-four individual lots. It is undisputed that to replat, Consolidated must obtain water and sewer services for each proposed lot. In 2017,

---

[2] The Participation Agreement defines "LUE" as follows:

> A Living Unit Equivalency is a standardized measure of the consumption, use, generated, or discharge of water or wastewater attributable to a single family residential unit, calculated in accordance with generally accepted engineering and planning standards for capital improvements and facilities expansion to serve new development, as defined in the '1999 Ten and Twenty Year Capital Improvement Program for Calculation of Impact Fees.' A Living Unit Equivalency is 1 single family residential living unit and the equivalency for multifamily residential unit and commercial (non residential) unit is 0.54 and 3.15 respectively.

Consolidated sought to obtain LUEs to meet this requirement; however, the City informed Consolidated that it would not issue an approval letter for the sale of LUEs because Consolidated's land had not been annexed into the City. The City informed Consolidated that to purchase LUEs, its land must be annexed into the City through a request for voluntary annexation, which requires payment of annexation fees. The City estimated these fees to be between $220,000 and $350,000. The City also informed Consolidated that, without annexation, water and sewer services could be provided, but only for three single-family residences.

In 2018, the City passed Ordinance 2018-O-056, pertaining to sewer service, and Ordinance 2018-O-069, pertaining to water service. Each ordinance amended Chapter 31 of the City's Code of Ordinances to require annexation before the City issues sewer and plumbing permits, except as permitted under Section 31-3. Section 31-3(a) provides:

> The [C]ity shall not provide water service to and for future land developments outside the city limits, save and except for the residents of the fifteen (15) colonias listed in the [Interlocal Government Agreement].

In 2020, Consolidated sued the City for declarations to establish its right to purchase LUEs without initiating voluntary annexation and paying related annexation fees. It also sued for a writ of mandamus to compel the City Manager and the Director of Utilities to sell LUEs to Consolidated without also imposing an annexation requirement. Consolidated moved for partial summary judgment on its claims. The City filed a motion for summary judgment, asserting the trial court's lack of subject matter jurisdiction. The trial court held a hearing on the cross-motions and issued a final order, dismissing Consolidated's claims with prejudice. Consolidated timely appealed.

## STANDARD OF REVIEW

We review a trial court's summary judgment *de novo*. *Tarr v. Timberwood Park Owners Assoc., Inc.*, 556 S.W.3d 274, 278 (Tex. 2018). We also review *de novo* a challenge to the trial court's subject matter jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

Summary judgment is proper when the movant has shown there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 680 (Tex. 2017). In reviewing a trial court's summary judgment ruling, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). When competing summary judgment motions are filed, each movant has the burden of establishing its entitlement to judgment as a matter of law. *Tarr*, 556 S.W.3d at 278. "When both parties move for summary judgment on the same issues and the trial court grants one motion and denies the other, we consider the summary judgment evidence presented by both sides, determine all questions presented, and if we determine that the trial court erred, render the judgment that the trial court should have rendered." *Gonzalez v. Janssen*, 553 S.W.3d 633, 637 (Tex. App.—San Antonio 2018, pet. denied); *see also Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

## DISCUSSION

The City argues in its motion for summary judgment that Consolidated failed to allege a valid waiver of governmental immunity, so as to establish the trial court's subject matter jurisdiction.

## I. Governmental Immunity

Sovereign and governmental immunity are common-law concepts that generally protect the State and its political subdivisions from the burdens of litigation. *Harris Cnty. v. Annab*, 547 S.W.3d 609, 612 (Tex. 2018). "Sovereign immunity protects the state and its various divisions, such as agencies and boards, from suit and liability, whereas governmental immunity provides similar protection to the political subdivisions of the state, such as counties, cities, and school

districts." *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57–58 (Tex. 2011) (citing *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003)).

Governmental immunity has two components: "immunity from liability, which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether." *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). Immunity from suit implicates a court's subject matter jurisdiction to decide a claim against a governmental entity. *Rosenberg Dev. Corp. v. Imperial Performing Arts, Inc.*, 571 S.W.3d 738, 746 (Tex. 2019). When a governmental defendant challenges jurisdiction on immunity grounds, the plaintiff has the burden to "affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity." *Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003).

## II. Consolidated's Claim for Declaratory Judgment

By its lawsuit, Consolidated sought a declaratory judgment that (1) the City's refusal to issue LUEs to Consolidated unless it voluntarily annexed its land into the City constituted a regulatory taking, (2) that Ordinance No. 2018-O-056, as applied to Consolidated to require annexation, was unconstitutional because it amounted to a regulatory taking, and (3) that the City Manager and the City's Director of Utilities acted *ultra vires* by requiring annexation before they would sell LUEs to Consolidated. Consolidated also asserted an *ultra vires* claim to compel the City Manager and the Director of Utilities to issue LUEs without first requiring annexation.

Consolidated sued for declaratory judgment pursuant to the Uniform Declaratory Judgments Act ("UDJA"), which is "merely a procedural device for deciding cases already within a court's jurisdiction." *Abbott v. Mex. Am. Legislative Caucus, Tex. House of Representatives*, 647 S.W.3d 681, 708 (Tex. 2022). The act provides only a limited waiver of sovereign and governmental immunity for challenges to the validity of a statute or ordinance. *See Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 552 (Tex. 2019). "UDJA claims requesting other types of declaratory relief are barred absent a legislative waiver of immunity with respect to the underlying

action." *Id.* at 553; *see City of El Paso v. Heinrich*, 284 S.W.3d 366, 370 (Tex. 2009). Other than the limited waiver in the UDJA, the act "does not enlarge a trial court's jurisdiction, and a litigant's request for declaratory relief does not alter a suit's underlying nature." *Heinrich*, 284 S.W.3d at 370.

We determine from the pleadings that the underlying nature of Consolidated's lawsuit is (1) a takings claim, pursuant to the Texas and United States Constitutions, (2) an "as-applied" challenge to the validity of a city ordinance based on a purportedly unconstitutional taking, and (3) an *ultra vires* claim. In general, the same legal theory for regulatory takings informs all aspects of the lawsuit, and our resolution of Consolidated's takings claim, in large part, resolves this appeal. We address it first and reach only the issues necessary to resolve this appeal. *See* TEX. R. APP. P. 47.1.

### III. Takings Claim

The Texas and United States Constitutions provide a waiver of governmental immunity "when the government refuses to acknowledge its intentional taking of private property for public use." *City of Baytown v. Schrock*, 645 S.W.3d 174, 178 (Tex. 2022); *see* U.S. CONST. amend. V; TEX. CONST. art. I, § 17.[3] When this waiver applies, a property owner may assert a takings claim. *Schrock*, 645 S.W.3d at 178.

"The touchstone of the constitutional takings protections is that a few not be forced . . . 'to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'" *Town of Flower Mound v. Stafford Estates Ltd. P'ship*, 135 S.W.3d 620, 642 (Tex. 2004) (quoting *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 835 n.4 (1987)). There are several distinct categories of takings claims. *Rischon Dev. Corp. v. City of Keller*, 242 S.W.3d 161, 167 (Tex.

---

[3] The Fifth Amendment to the United States Constitution provides: "[N]or shall private property be taken for public use, without just compensation." Article I, section 17 of the Texas Constitution provides: "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person . . . ." We do not differentiate between the two constitutions for purposes of this appeal because Consolidated does not distinguish between the two constitutional protections. *See Schrock*, 645 S.W.3d at 179 n.22.

App.—Fort Worth 2007, pet. denied). "A regulatory taking may occur when a government conditions the granting of a permit or some other type of government approval on an exaction from a landowner seeking that approval." *Mira Mar Dev. Corp. v. City of Coppell, Tex.*, 421 S.W.3d 74, 82 (Tex. App.—Dallas 2013, no pet.) (citing *Dolan v. City of Tigard*, 512 U.S. 374, 384–85 (1994); *Stafford Estates*, 135 S.W.3d at 634). "Any requirement that a developer provide or do something as a condition to receiving municipal approval is an exaction." *Rischon*, 242 S.W.3d at 167 (citing *Stafford Estates*, 135 S.W.3d at 625).

The term "rough proportionality" encapsulates the requirement of the Fifth Amendment as to exactions. *See Dolan*, 512 U.S. at 391; *Nollan*, 483 U.S. at 837; *Stafford Estates*, 135 S.W.3d at 633. The Supreme Court announced the test for determining whether an exaction is unconstitutional in the cases *Nollan v. California Coastal Commission* and *Dolan v. City of Tigard*. *See Dolan*, 512 U.S. at 391; *Nollan*, 483 U.S. at 837. The Texas Supreme Court restated the *Nollan/Dolan* test in *Town of Flower Mound v. Stafford Estates Limited Partnership* as follows: "[C]onditioning government approval of a development of property on some exaction is a compensable taking unless the condition (1) bears an essential nexus to the substantial advancement of some legitimate government interest and (2) is roughly proportional to the projected impact of the proposed development." *Stafford Estates*, 135 S.W.3d at 634; *see Dolan*, 512 U.S. at 391; *Nollan*, 483 U.S. at 837. Under this test, the government must make an "individualized determination that the required dedication is related both in nature and extent to the impact of the proposed development." *Stafford Estates*, 135 S.W.3d at 633 (citing *Dolan*, 512 U.S. at 391). The government's proof of "rough proportionality" must be more than bare conclusions; it is "required to measure that impact in a meaningful, though not precisely mathematical, way, and must show how the impact, thus measured, is roughly proportional in nature and extent to the required improvements." *Id.* at 644.

Consolidated alleges an unconstitutional exaction based on the City's requirement of annexation and the imposition of annexation fees before Consolidated may purchase LUEs. Consolidated argues that the fees the City charges for LUEs already account for the costs incurred to oversize the water and sewer lines to the colonias and that any additional annexation fees required in order to purchase LUEs cannot be "roughly proportional" under the *Nollan/Dolan* standard.

Consolidated's takings claim presents an unusual challenge. Unlike in *Nollan*, *Dolan*, and *Stafford Estates*, in which the conditions required for the permits and plats were authoritatively determined by the government entity wishing to impose the exaction, here, the conditions the City requires for annexation and the annexation fees have not been finally determined. *See Dolan*, 512 U.S. at 379–83 (permit conditioned on dedication of property for use as public greenway and path); *Nollan*, 483 U.S. at 828–29 (permit conditioned on creation of public easement); *Stafford Estates*, 135 S.W.3d at 623–24 (plats conditioned on rebuilding road with concrete). The City argues that, by failing to apply for annexation, Consolidated has deprived the City of an ability to consider and rule on actual costs related to annexation. The result, according to the City, is that "actual or roughly proportional costs cannot be established," and it asserts Consolidated is seeking an advisory opinion about hypothetical costs.

Moreover, the City argues the analysis is not as simple as Consolidated wishes it. While annexation is required to obtain LUEs, the purpose of annexation, according to the City, is not coextensive with the purpose of LUEs, and, therefore, the cost to annex addresses different government interests than the cost for LUEs. As the Director of Utilities asserts in his summary-judgment affidavit:

> The City supports the provision of water and wastewater facilities and services through the taxes paid by individuals who reside or operate places of business within the corporate limits of the City. Annexation is a means of ensuring that residents and businesses outside of the City's corporate limits who also benefit from

access to the City's facilities and services share the tax burden associated with maintaining those facilities and services.

The annexation costs that would be applied to [Consolidated] are directly tied to water and sewer and park dedication fees. The estimated annexation costs that would be applied to [Consolidated] are less than $350,000.00. Based on the information provided to the City by [Consolidated], the rough estimate of annexation costs is $220,061.22, but a more accurate figure will not be possible until the annexation process is started.

. . . The costs are associated with the level of development. For example, the city charges to recoup other services and infrastructure costs which are tied to annexation (such as whether traffic lights need to be put into place vs. stop signs, whether any drainage fees are necessary, whether any park land is included requiring additional maintenance by the City, etc.).

Although the costs may vary from year to year, they are applied using calculations based on the level of development selected by the developer and the development plans. The calculations apply to all annexation applicants based on, among other things, lot size, number of lots, and whether the property will be for residential or commercial use.

All of the water and sewer costs reflected in the [City's rough calculations] are based on an assessment performed by the Utilities Department of how much it will cost the City to treat and distribute water. This assessment is performed every year, and the costs are applied across the board to all developers who submit plat applications for that year. Such water and sewer fees are intended to enable the City to recover some of the costs that the City has already invested in obtaining and providing these services.

Contrasting LUEs, the Director of Utilities asserts: "An LUE is a divided recoupment amount generated by the difference in the cost from the oversized line [agreed to by participating landowners through the Participation Agreement] and the basic line paid for with state funds."

We hold that whether annexation costs are roughly proportional to their asserted purposes is not ripe for resolution until those costs are authoritatively set. Here, according to the uncontested averment of the City's Director of Utilities, "The City and [Consolidated] ha[ve] not even entered into discussions regarding the cost of annexation."

A case must be ripe in order for the trial court to have subject matter jurisdiction. *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 683 (Tex. 2020). "In determining whether a case is ripe, the focus is on whether the facts are sufficiently developed so that an injury has occurred or is

likely to occur, rather than being contingent or remote." *Id.* (citation omitted). "If the plaintiff's claimed injury is based on hypothetical facts, or upon events that have not yet come to pass, then the case is not ripe, and the court lacks subject matter jurisdiction." *Id.* (citation omitted). "[R]ipeness examines when that action may be brought," and the "doctrine serves to avoid premature adjudication." *Patterson v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998).[4]

"[I]n order for a regulatory takings claim to be ripe, there must be a final decision regarding the application of the regulations to the property at issue." *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 929 (Tex. 1998). Thus, with land-use regulation, "[a] court cannot determine whether a regulation has gone 'too far' unless it knows how far the regulation goes." *Id.* (quoting *MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 348 (1986)). Therefore, an "essential prerequisite" is "a final and authoritative determination of the type and intensity of development legally permitted on the subject property." *Id.* (quoting *MacDonald*, 477 U.S. at 348). Likewise, here, with a regulatory takings claim based on an extraction, we cannot determine whether the condition for government approval "(1) bears an essential nexus to the substantial advancement of some legitimate government interest and (2) is roughly proportional to the projected impact of the proposed development," unless we know the nature and extent of the condition imposed, which, in this case, includes the cost of annexation. *Stafford Estates*, 135 S.W.3d at 634.

We stress that Consolidated's takings claim complains principally about annexation costs. In other words, Consolidated does not complain about annexation alone. In fact, its attorney stated at the hearing on the parties' motions for summary judgment: "There is no dispute that the City certainly can annex property within its extraterritorial jurisdiction within its discretion. [Consolidated] has no objection to that. [Consolidated] has no objection to being annexed by the

---

[4] As a component of subject matter jurisdiction, we may raise the issue of ripeness *sua sponte*. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). Although the City does not address ripeness directly, it argues the related matter, which we do not reach, that Consolidated failed to exhaust administrative remedies.

City in that capacity."[5] However, because we do not know the cost to annex, we cannot perform the fact-specific, rough proportionality inquiry required by *Nollan* and *Dolan*. *See Dolan*, 512 U.S. at 391; *Nollan*, 483 U.S. at 837; *Stafford Estates*, 135 S.W.3d at 634. As the Director of Utilities explained, annexation, with its attendant costs, serves different purposes than LUEs, with their separate costs. While LUEs relate to the initial construction of oversized lines, annexation costs concern treatment and distribution of water, the maintenance of parkland, and the installation of traffic infrastructure. More generally, annexation ensures landowners become municipal taxpayers, who share in the tax burden associated with maintaining city services. *Cf. Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 606 (2013) ("Our precedents . . . enable permitting authorities to insist that applicants bear the full costs of their proposals[.]"). Without an authoritative determination of costs, we cannot assess whether the costs assessed pursuant to annexation are roughly proportional to the interests the City asserts.

In sum, we hold Consolidated's regulatory takings claim regarding the cost of annexation is premature without an authoritative determination by the City as to the cost of annexation. *See Mayhew*, 964 S.W.2d at 929; *cf. Koontz*, 570 U.S. at 610 (remanding issue of whether "demands for property were too indefinite to give rise to liability under *Nollan* and *Dolan*"); *id.* at 631 (Kagan, J., dissenting) (explaining government demand "must be unequivocal" before application of *Nollan/Dolan* test); *Koontz Coal. v. City of Seattle*, No. C14-0218JLR, 2014 WL 5384434, at *4 (W.D. Wash. Oct. 20, 2014) ("[The *Nollan/Dolan*] inquiry cannot be made in a vacuum."). Therefore, the trial court lacks subject matter jurisdiction over the claim and over Consolidated's related requests for declarations, and the trial court properly dismissed these requests. *See Sw. Elec. Power Co.*, 595 S.W.3d at 683–84; *Heinrich*, 284 S.W.3d at 370; *Mayhew*, 964 S.W.2d at

---

[5] In its reply brief Consolidated asserts: "[T]he burden resulting from the City's decision to condition the sale of LUEs to [Consolidated] is the attendant cost of having to apply for, and pay the accompanying cost of, voluntary annexation."

928.[6]  However, because the claim and requests are not ripe, dismissal should have been without prejudice.  *See Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 853 (Tex. 2000) (affirming dismissal without prejudice of unripe claims).  Accordingly, we modify the trial court's judgment to dismiss Consolidated's regulatory takings claim without prejudice.  *See* TEX. R. APP. P. 43.2(b).

## IV.  Challenge to the Validity of City Ordinance 2018-O-056

We also affirm dismissal of Consolidated's declaratory-judgment claim challenging the validity of City Ordinance 2018-O-056 and modify the judgment only to dismiss the claim without prejudice.  *See id.*  The ordinance generally requires annexation before the City will issue a permit for a sewer connection.  Consolidated argues application of this ordinance results in an unconstitutional taking based on the *Nollan/Dolan* standard.  For the reasons just discussed, Consolidated's unconstitutional takings claim is premature, therefore, so too is its challenge to the ordinance and its request for related declarations.  *See Sw. Elec. Power Co.*, 595 S.W.3d at 683; *Heinrich*, 284 S.W.3d at 370; *Mayhew*, 964 S.W.2d at 928; *see also Santander Consumer USA, Inc. v. City of San Antonio*, No. 04-20-00341-CV, 2020 WL 7753730, at *7 (Tex. App.—San Antonio Dec. 30, 2020, no pet.) (considering UDJA's independent waiver of governmental immunity but, nevertheless, holding declaratory judgment claim challenging municipal ordinance was not justiciable because plaintiff had not established "that a declaratory judgment in its favor would resolve a tangible, existing conflict, as opposed to a hypothetical future dispute that may never occur").

## V.  *Ultra Vires* Claim

---

[6] The lack of an authoritative determination by the City as to annexation costs is either a problem of ripeness, as we have determined it to be, *see Mayhew*, 964 S.W.2d at 928, or one going to the merits, which in turn goes to whether there has been a waiver of governmental immunity, *see Schrock*, 645 S.W.3d at 178; *cf. Koontz*, 570 U.S. at 634 (Kagan, J., dissenting) ("I would . . . hold that the District did not impose an unconstitutional condition — because it did not impose a condition at all.").  Either way, the problem deprives the trial court of jurisdiction.  *See Schrock*, 645 S.W.3d at 178; *Mayhew*, 964 S.W.2d at 928.

Last, Consolidated sued for a declaration of *ultra vires* action and for a writ of mandamus to direct the City Manager and the City's Director of Utilities to sell LUEs to Consolidated. Consolidated asserts that these officials acted *ultra vires* by imposing an annexation requirement before allowing a sale.

"[I]n certain narrow instances, a suit against a state official can proceed even in the absence of a waiver of immunity if the official's actions are *ultra vires*." *Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017). Under the "ultra vires exception" to sovereign immunity, a claimant may file suit to compel a government official "to comply with statutory or constitutional provisions" through prospective injunctive or declaratory relief. *Heinrich*, 284 S.W.3d at 372. To state a claim under the *ultra-vires* exception, a plaintiff must allege and prove that the named official or governmental employee acted without legal authority or failed to perform a ministerial act. *Honors Acad., Inc. v. Texas Educ. Agency*, 555 S.W.3d 54, 68 (Tex. 2018).

Consolidated alleges the City Manager and the Director of Utilities acted without legal authority by denying a sale of LUEs to Consolidated because this decision has no basis in statute or City ordinance and amounts to an illegal exaction and an unconstitutional taking under the *Nollan/Dolan* standard. For the reasons discussed above, Consolidated has not established an unconstitutional exaction or that the City officials' actions were contrary to statute or City ordinance, so as to allow for prospective relief. *See Heinrich*, 284 S.W.3d at 376. Ordinances 2018-O-056 and 2018-O-069 require annexation before the City may issue sewer and plumbing permits, respectively, unless an exception is met. Consolidated does not argue that an exception has been met. Accordingly, we affirm the trial court's dismissal of Consolidated's *ultra vires* claim and related declarations. *See Sw. Elec. Power Co.*, 595 S.W.3d at 683; *Heinrich*, 284 S.W.3d at 374–77.[7]

---

[7] Although Consolidated complains that denial of the sale of LUEs prior to the 2018 passage of Ordinances 2018-O-056 and 2018-O-069 was unauthorized at the time, we do not consider the matter because successful "*ultra vires* claimants are only entitled to prospective relief." *City of Houston v. Houston Mun. Employees Pension Sys.*, 549

## CONCLUSION

We affirm the judgment of the trial court as modified.

Rebeca C. Martinez, Chief Justice

---

S.W.3d 566, 576 (Tex. 2018); *see Heinrich*, 284 S.W.3d at 376.  Thus, whether Consolidated could have established *ultra vires* action in 2017 is immaterial; it cannot now establish *ultra vires* action because the ordinances plainly establish the City's authority to deny the sale of LUEs to Consolidated.